UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

                      Plaintiff,

            -against-

YESHIVAT BETH HILLEL OF KRASNA, INC., M.G.
a minor, by his parents and lawful guardians, RAMI
GARBER and OLIVIA GARBER, and RAMI GARBER
and OLIVIA GARBER in their individual capacities,

                      Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

16-CV-5096 (NGG) (CLP)

NICHOLAS G. GARAUFIS, United States District Judge.

The parties in this case assert counter-claims for declaratory judgment concerning an insurer's duty to defend and indemnify in an underlying dispute involving an auto collision (the "Garber Action"). Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia"), the insurer, initiated this action for declaratory judgment against two groups of Defendants: (1) Yeshivat Beth Hillel of Krasna, Inc. ("Yeshivat"), which is the insured party and the defendant in the Garber Action; and (2) the plaintiffs in the Garber Action (the "Garbers"): M.G. (a minor), and Rami and Olivia Garber[1] (in their capacities as M.G.'s parents/guardians, as well as in their individual capacities). (Compl. (Dkt. 1).) Yeshivat has asserted cross-claims against Philadelphia for declaratory judgment, plus fees and costs. (See Yeshivat Answer (Dkt. 15).)

Before the court is Philadelphia's motion for summary judgment. (Mot. (Dkt. 28).) For the following reasons, Philadelphia's motion is DENIED.

---

[1] Olivia Garber has not appeared in this case.

1

# I. BACKGROUND

## A. Facts

The court constructs the following statement of facts from the parties' Local Rule 56.1 statements and the admissible evidence they submitted. (See Philadelphia Rule 56.1 Statement ("Philadelphia 56.1") (Dkt. 28-2); Yeshivat Rule 56.1 Statement ("Yeshivat 56.1") (Dkt. 29-1); Garbers Rule 56.1 Statement ("Garbers 56.1") (Dkt. 30-1); Philadelphia Resp. to Yeshivat's Undisputed Facts ("Philadelphia Resp. to Yeshivat 56.1") (Dkt 31-1); Philadelphia Resp. to Garbers' Statement of Additional Facts ("Philadelphia Resp. to Garbers 56.1") (Dkt 31-2).) All evidence is construed in the light most favorable to the non-moving party with "all reasonable inferences" drawn in its favor. ING Bank N.V. v. M/V Temara, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018) (internal quotations and citation omitted). The following facts are uncontested unless otherwise stated.

### 1. The May 2, 2013 Collision and the Garber Action

On May 2, 2013, a school bus allegedly struck "M.G.," an infant, on 12th Avenue at or near where it intersects with 40th Street in the County of Kings, State of New York. (Philadelphia 56.1 ¶ 3.)[2] The bus driver was a man named Meyer Klein, who was bringing children to Yeshivat, a school, at the time of the accident (the "Collision"). (Philadelphia 56.1 ¶ 25; Dep. of Meyer Klein ("Klein Dep.") (Dkt. 28-8) at 17:20-18:10.) M.G. allegedly suffered severe injuries from the Collision. (Philadelphia Resp. to Garbers 56.1 ¶ 1.) On May 20, 2013, the Garbers sued Yeshivat, the Congregation Redad of Lusk (the "Congregation"), Klein, and Camp Ohel, Inc. in the Supreme Court of the State of New York.[3] (Philadelphia 56.1 ¶ 6.) The

---

[2] For ease of reference, the court cites to paragraphs of Philadelphia's Local Rule 56.1 statement where Defendants do not dispute the assertions therein.

[3] On July 16, 2013, the Garbers amended their complaint and removed Camp Ohel, Inc., as a defendant. (Philadelphia 56.1 at ¶ 7.)

2

Garbers allege that Yeshivat is liable for the negligent operation of the bus and for negligently engaging Klein, whom it knew or should have known was unqualified to drive a school bus. (Philadelphia Resp. to Garbers 56.1 ¶ 2.)

Discovery in the Garber Action revealed that the Congregation owned the school bus for use in transporting children to a Congregation-operated summer camp in upstate New York; when the summer camp was closed, the Congregation stored the bus in a Brooklyn garage. (Philadelphia 56.1 ¶¶ 5, 16, 17, 19, 21.) Rabbi David Vogel, a Yeshivat employee and a volunteer for the Congregation, testified at an August 28, 2015 deposition that he had borrowed this particular bus from the Congregation, and that the Congregation would sometimes permit him to use its buses for Yeshivat when the Congregation's summer camp was not in session. (Philadelphia 56.1 ¶¶ 15-20; Dep. of David Vogel ("Vogel Dep.") (Dkt. 28-7) at 20:12-18, 21:11-17.) Klein testified at an April 15, 2015 deposition that he was not employed by Yeshivat, but had volunteered (with no expectation of remuneration) to drive students to Yeshivat that day because Vogel, his acquaintance, had asked him to do so. (Philadelphia 56.1 ¶ 25; Philadelphia Resp. to Garbers ¶ 10; Klein Dep. at 27:24-28:11.)

2. Insurance Policy

Philadelphia issued Policy No. PHPK978521 (the "Policy") to Yeshivat for the period of February 19, 2013, to February 19, 2014. (Philadelphia 56.1 ¶ 1.) The Policy contains a Commercial General Liability Coverage Form (the "CGL Form") with limits of $1 million per occurrence and $2 million in aggregate. (Id.) Exclusion (g) of the CGL Form (the "Auto Exclusion") provides that the Policy does not cover:

> "Bodily injury" . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . "auto"[4] . . . owned or operated by or rented or loaned to any

---

[4] The bus at issue in this case is an "auto" within the meaning of the Auto Exclusion. (Philadelphia 56.1 ¶ 12.)

3

> insured . . . This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" . . . involves the ownership, maintenance, use or entrustment to others of any "auto" that is owned or operated by or rented or loaned to any insured.[5]

(Philadelphia 56.1. ¶ 2.) Philadelphia asserts that the Auto Exclusion applies to the Garber Action. (Philadelphia 56.1 ¶ 26.)

Defendants disagree. (Yeshivat 56.1 ¶ 26; Garbers 56.1 ¶ 26.) They contend that an endorsement contained in a rider to the Policy (the "Endorsement") supersedes the Auto Exclusion with respect to the Garber Action. (Garbers 56.1 ¶ 11; Yeshivat 56.1 ¶ 11.) The Endorsement states in relevant part that,

> With respect to the operation of any college or school by you or on your behalf, the following provisions apply: . . . With respect to the transportation of students, [the Auto Exclusion] is replaced by the following [language]: [The Policy does not cover] "[b]odily injury" . . . arising out of the ownership, maintenance, operation, use, "loading or unloading" or entrustment to others of any . . . "auto" . . . that is owned, operated or hired by any insured."

(Endorsement (Dkt. 29-7) at 1.) This Endorsement differs from the Auto Exclusion in that it only applies "with respect to the transportation of students" and that it does not refer to automobiles that are <u>loaned</u> to Yeshivat. That is, the Endorsement does <u>not</u> exclude coverage for claims arising from the use of automobiles loaned to Yeshivat, but the Auto Exclusion <u>does</u> exclude coverage for such claims. This is notable because the bus involved in the Collision had been loaned to Yeshivat by the Congregation. (See Philadelphia 56.1 ¶¶ 15-20.)

---

[5] Meyer Klein, the bus driver, is not an "insured" under the terms and definitions of the Policy. (Philadelphia Resp. to Yeshivat ¶¶ 30-31.)

4

### 3. Investigation and Letter Reserving Rights

The Congregation gave Philadelphia notice of the Garber Action on June 12, 2013. (Philadelphia Resp. to Yeshivat ¶ 28.) Yeshivat forwarded the Garbers' complaint to Philadelphia on or about June 20, 2013. (Id.)

Philadelphia investigated the claim, and then sent a letter to Vogel concerning its coverage position (the "Letter') on July 18, 2013. (Philadelphia Resp. to Garbers ¶¶ 3, 4.) The Letter is confusing. It contains the following introductory language:

> This letter is known as a Reservation of Rights. This means [Plaintiff] is reserving any rights that it may have under any insurance policy which has been issued to you. Please be advised that there is question [sic] as to whether this Company has a duty under the terms of the policy to defend or indemnify you . . . for this loss . . . for the following reasons.

(Letter (Dkt. 28-9) at 1.) The Letter goes on to summarize the Garber Action, excerpt pertinent portions of the Policy (including the Auto Exclusion), and provide reasons that might cause Philadelphia to disclaim coverage for the Garber Action. (Id. at 2-13.) In particular, the Letter states that the Policy "is a general liability policy [and] not an auto policy"; that the Policy "would not be responsible for the actions of Mr. Klein if it is determined that he was in the course and scope of his employment with Yeshiva[t]"; that the bus in question would be "excluded from coverage under [the Auto Exclusion]" if it was found to be owned by Yeshivat; and that the Garber Action "may qualify as an auto loss which is not covered under [the Policy]." (Id. at 2, 12.) But the Letter does not say that Philadelphia had decided to disclaim coverage for the Garber Action; on the contrary, it indicates that Philadelphia's investigation into the Collision was still ongoing and that Philadelphia had assigned counsel to defend Yeshivat in the meantime. (Id. at 12.) And, more importantly (as explained below), the Letter does not mention the Endorsement.

The parties disagree about the Letter's implications. Philadelphia characterizes it as a "Partial Disclaimer based on the Auto Exclusion" and maintains that the Letter disclaimed coverage for any losses that fell within the Auto Exclusion's parameters. (Philadelphia 56.1 ¶ 9; Philadelphia Mem. in Supp. of Mot. ("Philadelphia Mem.") (Dkt. 28-1) at 4-5.) Defendants counter that the Letter was merely a reservation of rights and did not disclaim coverage as to any claim in the Garber Action. (Yeshiva 56.1 ¶ 9; Garbers 56.1 ¶ 9.) The parties also dispute whether, at the time Philadelphia issued the Letter, it knew or should have known that Yeshivat did not own the bus. (Philadelphia Resp. to Garbers 56.1 ¶ 15.)

Philadelphia did not issue any further letter concerning its coverage position after July 18, 2013. (Philadelphia Resp. to Garbers 56.1 ¶ 18.) It appears that Philadelphia's assigned counsel continued to defend Yeshivat in the Garber Action until Philadelphia filed this suit on September 14, 2016. (See Philadelphia Pre-Motion Conference Req. ("PMC Req.") (Dkt. 19) at 2; Garbers Opp'n (Dkt. 30) at 13 n.7.)

B.   Procedural History

Philadelphia filed this suit on September 14, 2016. (Compl.) In its complaint, Philadelphia characterized the Letter as a "coverage position/reservation of rights letter including a disclaimer of coverage based on [the Auto Exclusion]." (Compl. ¶ 24.) The Garbers answered on November 15, 2016 (Garbers' Answer (Dkt. 10)), and Yeshivat answered and filed counter-claims for a declaratory judgment and legal fees on November 30, 2016 (Yeshivat Answer.) Philadelphia answered Yeshivat's counterclaims on December 1, 2016. (Philadelphia Answer (Dkt. 17).) Philadelphia then requested a pre-motion conference at which it would request leave to move for summary judgment. (PMC Req.) In its letter requesting the conference ("PMC request"), Philadelphia stated that it had "assigned counsel in the [Garber Action] to defend [Yeshivat] . . . under a full reservation of rights"—apparently referring to the Letter—and that

6

"Philadelphia explicitly reserved its right to disclaim based on the Auto Exclusion . . . to the extent it was determined that the Auto Exclusion applied." (Id. at 2.) Philadelphia then noted that its denial of coverage was based on Vogel's testimony that the bus had been loaned to the Yeshivat, which (according to Philadelphia) established that the Collision "falls squarely within the Auto Exclusion." (Id. at 2.)

Philadelphia eventually filed its motion for summary judgment on June 9, 2017, arguing that "by operation of the Auto Exclusion, it has no duty to indemnify (and by extension, no duty to defend) the Yeshivat," and that the Letter served as a timely disclaimer of coverage. (Philadelphia Mem. at 2.) Yeshivat and the Garbers filed separate briefs opposing the motion, contending that Philadelphia did not timely disclaim coverage and that, even if Philadelphia had properly disclaimed, the Policy provides coverage for the Garber Action because the Endorsement supersedes the Auto Exclusion. (Yeshivat Opp'n (Dkt. 29); Garbers Opp'n.) Philadelphia filed one reply. (Reply (Dkt. 31).)

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (alteration in original) (quoting Celotex

7

Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Anderson, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW W. LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Anderson, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Whether Philadelphia Properly Disclaimed Coverage

#### 1. Legal Standard

Under New York State Insurance Law § 3420(d)(2), "[a]n insurer is obligated to give written notice of a disclaimer of coverage 'as soon as is reasonably possible,' measured from the time that the insurer has sufficient information to disclaim coverage in good faith." Webster ex rel. Webster v. Mount Vernon Fire Ins. Co., 368 F.3d 209, 216 (2d Cir. 2004) (Sotomayor, J.) (quoting N.Y. Ins. Law § 3420(d)(2)). "[A]n insurer that fails, without good reason, 'to provide

the insured with timely notice of its disclaimer [of liability] or denial of coverage on the basis of a policy exclusion . . . will be estopped from disclaiming liability or denying coverage." City of New York v. Western Heritage Ins. Co., 98 F. Supp. 3d 557, 565 (E.D.N.Y. 2015) (quoting Moore v. Ewing, 781 N.Y.S. 2d 51, 54 (N.Y. App. Div. 2004)). An insurer bears the burden of showing that its disclaimer was timely. Quality Bldg. Contractor, Inc. v. Ill. Union Ins. Co., No. 15-CV-6830 (NRB), 2016 WL 4097847, at *4 (S.D.N.Y. July 28, 2016) (citing First Fin. Ins. v. Jetco Contracting Corp., 801 N.E.2d 835, 839 (N.Y. 2003)). Timeliness is typically a question of fact, and only in an "exceptional case" may it be decided without the benefit of a jury. Western Heritage, 98 F. Supp. 3d at 565 (quoting U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 369 F.3d 102, 107 (2d Cir. 2004)).

In addition to being timely, "the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated." Western Heritage, 98 F. Supp. 3d at 567 (quoting Gen. Acc. Ins. Grp. v. Cirucci, 387 N.E.2d 223, 225 (N.Y. 1979)). "An insurer's justification for denying coverage is strictly limited to the ground stated in the notice of disclaimer." Ability Transmission, Inc. v. John's Transmission, Inc., 55 N.Y.S.3d 367, 368 (N.Y. App. Div. 2017) (citations omitted); accord Olin Corp. v. Lamorak Ins. Co., 332 F. Supp. 3d 818, 851 (S.D.N.Y. 2018) (citing New York v. AMRO Realty Corp., 936 F.2d 1420, 1432 (2d Cir. 1991)); Luria Bros. & Co., Inc. v. Alliance Assur. Co., Ltd., 780 F.2d 1082, 1090 (2d Cir. 1986).

2. Application

As an initial matter, the Garbers contend that Philadelphia is bound by its admission in its PMC request that the Letter was meant to "'reserve [Philadelphia's] right to disclaim based on the Auto Exclusion . . . to the extent it was determined that the Auto Exclusion applied." (Garbers Opp'n at 13 (quoting PMC Req.).) Per the Garbers, this dooms Philadelphia's motion

because a "reservation of rights does not qualify as a timely disclaimer." (Garbers Opp'n at 15 (quoting Henner v. Everdry Mktg. & Mgt., Inc., 902 N.Y.S.2d 765, 767 (N.Y. App. Div. 2010).)

The court disagrees with the Garbers on this point. A letter stating that an insurer will not cover a certain type of claim may qualify as a disclaimer even if it contains "reservation of rights" language. See QBE Ins. Corp. v Jinx-Proof Inc., 6 N.E.3d 583, 584-85 (N.Y. 2014). Under New York law, the key factor to consider is whether a letter clearly indicates what types of claims are excluded from coverage and the grounds for the exclusion. See id. (finding that an insurer had effectively disclaimed coverage because it had "specifically and consistently stated that [the] insurance policy excludes coverage for assault and battery claim," even though the insurer had used "contradictory and confusing" "reservation of rights" language). Thus, Philadelphia's characterization of the Letter as having "reserve[d] its right to disclaim" is not fatal to Philadelphia's motion.

Philadelphia's motion fails for other reasons, however. The Letter notes two scenarios in which the Policy would not cover the Garber Action: if Klein had driven the bus "in the course and scope of his employment with Yeshiva," and if the bus was found to be owned by the Yeshivat. (Letter at 2, 12.) Neither of these scenarios happened: Klein testified that he was not employed by Yeshivat (Philadelphia Resp. to Garbers ¶ 10), and Yeshivat did not own the bus (Philadelphia Resp. to Garbers ¶ 11). Thus, while the Letter may have disclaimed coverage for those two hypothetical scenarios, Philadelphia has not shown that it properly disclaimed coverage for the Garber Action or any other claim arising from the Collision.

Moreover, the Letter cites the Auto Exclusion as the basis for its disclaimer of coverage. (Letter at 12 ("If the auto is found to be owned by you, it is excluded from coverage under [the Auto Exclusion].").) But as Defendants note (Yeshivat Opp'n at 6-7; Garbers Opp'n at 25-26),

10

the Endorsement supersedes the Auto Exclusion "with respect to the transportation of [Yeshivat's] students." (Endorsement at 1.) The Collision occurred while Klein was transporting students to the Yeshivat (Philadelphia 56.1 ¶¶ 21, 25), so the Auto Exclusion does not apply to the Garber Action. Yet, in its Letter, Philadelphia relied solely on the Auto Exclusion and did not even mention the Endorsement.[6] Philadelphia has thus failed to show that it disclaimed with the "high degree of specificity" that is required. Western Heritage, 98 F. Supp. 3d at 567 (E.D.N.Y. 2015) (quoting Gen. Acc., 387 N.E.2d at 225). Consequently, the court denies Philadelphia's motion for summary judgment.[7]

B. Whether the Policy Covers the Garber Action

Even if Philadelphia had properly attempted to disclaim coverage, the court would still deny its motion because Philadelphia has not shown that the Policy does not cover the Garber Action.

"Before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." Dean v. Tower Ins. Co. of N.Y., 979 N.E.2d 1143, 1145 (N.Y. 2012) (alteration adopted) (citation omitted). "Ambiguities in an insurance policy are to be construed against the insurer." Id. (alteration adopted) (citation omitted).

---

[6] Philadelphia maintains that the Endorsement does not apply to the Garber Action because M.G. was not a student. (Reply at 5.) This is unpersuasive. Philadelphia has not explained why it matters that the injured party was not himself a student.

[7] By relying solely on the Auto Exclusion as a defense to coverage in the Letter and in its filings in this case, Philadelphia appears to have waived all other defenses, including any defense based on the Endorsement. See Olin Corp., 332 F. Supp. 3d at 850-51 ("The Second Circuit has held that under New York law, 'an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense.'" (quoting AMRO Realty, 936 F.2d at 1432).

For the reasons discussed above, Philadelphia has not met its burden of proving that the Auto Exclusion applies to the Garber Action. And the Endorsement, which supersedes the Auto Exclusion, does not appear to exclude coverage for the Garber Action because the bus at issue was not "owned, operated, or hired by an insured" under the Policy.[8] (Endorsement at 1.) The bus was loaned to Yeshivat (Philadelphia 56.1 ¶¶ 20-21, 23) and operated by Klein, who is not an insured under the terms and definitions of the Policy (Philadelphia Resp. to Yeshivat ¶¶ 30-31.) Indeed, the key difference between the Auto Exclusion and the Endorsement is illustrated by Philadelphia's own arguments. In its complaint (Compl. ¶¶ 30, 35) and its brief in support of its motion (Philadelphia Mem. at 7-10), Philadelphia relied on the Auto Exclusion's use of the term "loaned"—a term that is absent from the Endorsement (see Endorsement at 1).

In sum, the Auto Exclusion would exclude coverage <u>if</u> it applied to the Garber Action, but it does not. Instead, the Endorsement applies, and its terms do <u>not</u> exclude coverage for the Garber Action—or, at the very least, Philadelphia has not proven the reverse to be true. As Philadelphia has not persuaded the court that the Policy does not require it to defend or indemnify Yeshivat in the Garber Action, Philadelphia's summary judgment motion must be denied.

---

[8] The bus was owned by Congregation, who may have its own insurance policy with Philadelphia. (Philadelphia 56.1 ¶ 23.)

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Philadelphia's motion for summary judgment (Dkt. 28). The court DIRECTS the parties to contact the chambers of Magistrate Judge Cheryl L. Pollak to schedule a conference regarding the next steps in this case.

SO ORDERED.

Dated: Brooklyn, New York
   February 7, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge